UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLISION SCIENCES, INC.

    PETITIONER,

CIVIL ACTION NO: _____

v.

BOSCH AUTOMOTIVE SERVICE
SOLUTIONS, INC.

    RESPONDENT.

## PETITION TO VACATE OR MODIFY ARBITRATION AWARD AND MEMORANDUM IN SUPPORT

Pursuant to 9 U.S.C. § 10 and § 11 ("FAA"), Petitioner Collision Sciences, Inc. ("CSI") moves this Court to vacate or, in the alternative, modify an Arbitration Award (the "Award") entered January 10, 2025, in favor of Respondent Bosch Automotive Service Solutions, Inc. ("Bosch"). In support thereof, CSI states as follows:

## INTRODUCTION

This is a breach of contract dispute. The End User Licensing Agreement ("EULA") at issue in this case expressly states that injunctive relief may *only* be issued against CSI as an entity. Nevertheless, on January 10, 2025, the arbitrator issued an Award that included a permanent injunction against not just CSI, but its employees in their individual capacity, as well as various third parties. By issuing

an injunction that extends to CSI's employees in their individual capacity, as well as third parties, who are all indisputably not parties to the EULA, the arbitrator simply disregarded the explicit boundaries of his authority. This is not a mere procedural misstep; it is a fundamental overreach that violates the very terms of the parties' agreement.

To make matters worse, the permanent injunction was issued in manifest disregard of the law. Despite the clearly defined principles of injunctive relief, the arbitrator issued a permanent injunction without finding any harm to Bosch, much less harm that could rise to the extraordinary level of irreparable harm. Such a decision represents a blatant departure from well-established precedent and constitutes a manifest disregard of the law that undermines the integrity of the arbitration process.

While arbitrators are entitled to substantial deference, that deference is not unlimited. The arbitrator ignored the plain language of the EULA in issuing injunctive relief against individuals not party to the agreement and his opinion is devoid of evidence to support injunctive relief. For these reasons, CSI respectfully requests that this Court vacate or, in the alternative, modify the Award.

## PARTIES, JURISDICTION AND VENUE

As a preliminary matter, this Court properly has jurisdiction over this dispute. CSI is a foreign corporation with a principal place of business in Mississauga,

Ontario, Canada; Bosch, on the other hand, is a Delaware corporation with its principal place of business in Warren, Michigan. As this dispute involves an amount in controversy at a value exceeding the sum of $75,000, and because the parties are diverse, this Court properly has diversity jurisdiction pursuant to 28 U.S. § 1332(c). Further, venue is properly with this Court pursuant to 9 U.S. § 10, as the Award was made within this Court's district, in Detroit, Michigan.

## FACTS AND BACKGROUND

CSI was created for the purpose of making accident-specific collision data more accessible and aiding customers in the interpretation of such data. *See* Arbitration Hearing Transcript, **Exhibit A**, at 270:6-24. As early as 2017, CSI was recognized as one of many companies working on a solution whereby you hook a Crash Data Retrieval ("CDR") kit up remotely to a vehicle On Board Diagnostic ("OBD") port via a wireless link. *See* September 12, 2017, Email Exchange, **Exhibit B**. This approach to data retrieval is particularly attractive to insurance companies, as it is more cost-effective than purchasing multiple kits. *Id.*

Bosch, on the other hand, has a business model drastically different than CSI. Bosch relies on CDR kits which must be physically connected directly to a vehicle, at substantial expense. See **Exhibit A**, at 34:12-19. By comparison, CSI's product is able to retrieve CDR data cost-effectively and charge a fee for technical consultation and presentation of a contextualized and user-friendly report. *Id.* at

3

275:11-17. Among other differences, CSI's primary customers are insurance adjusters, while Bosch's main users are law enforcement and accident reconstructions. *Id.* at 280:2-4.

Before Bosch filed its Demand for Arbitration, CSI and Bosch enjoyed a professional relationship for years that was governed by the EULA. *See* EULA, **Exhibit C**. Section 1 of the EULA clarifies that the term "You" as used throughout the agreement will mean the company that entered into the agreement. *Id.* at § 1. Section 1 contains no language binding, or purporting to bind, any employees, officers, or agents of CSI to the EULA. Later in the EULA, Section 8.1 provides that any efforts to reverse engineer, decode, decompile, or disassemble the source code "could violate Bosch's trade secret rights and cause Bosch immediate and irreparable injury, entitling Bosch to obtain a preliminary and/or permanent injunction ***against You***." *Id.* at § 8.1 (emphasis added).

Throughout the proceedings, it has been indisputable that CSI was the party that entered into this agreement. *See, e.g.*, Award, **Exhibit D**, at p. 1 (acknowledging that the dispute concerned whether "CSI breached the EULA"). Indeed, when Bosch filed its Demand for Arbitration it named only CSI as the Respondent and sought relief in the form of "permanent injunctive relief requiring *Collision Sciences* to comply with the EULA" along with "[p]ermanent injunctive relief requiring

Collision Sciences to cease all of use of the Bosch CDR Software prohibited by the EULA." *See* Demand for Arbitration, **Exhibit E**, p. 19 (emphasis added).

When the parties engaged in arbitration on September 9 and 10, 2024, the relevant issues concerned whether CSI breached the following sections of the EULA: (i) the derivative works provision contained in § 1.3 and § 2.3.5; (ii) the competition provision contained in § 2.3.7; (iii) the remote connection provision contained in § 2.2.1; and (iv) the reverse engineering provision contained in § 2.3.1. *See* **Exhibit D**, at p. 2. As both parties submitted in their pre-arbitration briefs, the contemplated relief for these purported breaches was monetary damages and "a permanent injunction, requiring Collision Sciences" to cease use of the Bosch CDR software. *See, e.g.*, Bosch's Pre-Hearing Brief, **Exhibit F**, at p. 19-20.

At arbitration, a key issue concerned whether Bosch had suffered any form of harm as a result of CSI's purported breaches of the EULA. *See* CSI's Post-Hearing Brief, **Exhibit G**, at p. 17-20. CSI pointed to both hearing testimony from Bosch representatives describing solely speculative injuries and Bosch's inability—after *more than three years* of working on the case—to identify a single metric showing any form of harm whatsoever. *Id.* at p. 19. The parties each briefed these issues extensively following the hearing and awaited the arbitrator's final decision.

On January 10, 2025, the arbitrator sent the parties the Award. *See* **Exhibit D**. Despite the clear language in the EULA restricting relief to just CSI, and despite the

fact that Bosch had consistently only sought injunctive relief from just CSI, the Award enjoined "CSI, including its employees, owners, officers, contractors, and agents" from using or possessing any version of the Bosch CDR Software, "including any version licensed to third parties." *Id.* at p. 8. The Award similarly failed to identify any actual harm allegedly suffered by Bosch that could justify the extraordinary remedy of injunctive relief. *Id.* at p. 7-8. Accordingly, CSI brings the present Petition to vacate or, in the alternative, modify the Award.

## **LAW AND ARGUMENT**

Pursuant to § 12 of the Federal Arbitration Act, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The FAA goes on to clarify that a court may vacate an arbitration award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrator; (3) where the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrator exceeded his or her powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10.

Further, a court may also vacate an award found to be in manifest disregard of the law. *Leviathan Grp. LLC v. Delco LLC*, 735 F. Supp. 3d 823, 828 (E.D. Mich. 2024), *aff'd*, No. 24-1547, 2025 WL 884085 (6th Cir. Mar. 21, 2025) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). Recognizing this concept "as a gloss on Section 10(a)(4), a party may establish "manifest disregard" where "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).

Pursuant to § 11 of the FAA, district courts are also vested with the power to modify or correct arbitration awards under appropriate circumstances. Specifically, modification is permitted "where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."

**I. THE ARBITRATOR EXCEEDED HIS AUTHORITY BY ISSUING INJUNCTIVE RELIEF AGAINST INDIVIDUALS WHO ARE NOT PARTIES TO THE EULA.**

First, the Award should be vacated, because the Arbitrator exceeded the scope of his authority under the EULA. The United States Court of Appeals for the 6th Circuit has established that an arbitrator may exceed his or her authority by "determining the rights of individuals who were not parties in the arbitration proceedings." *See NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1078 (6th Cir. 1995); *see also Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 847 (6th Cir.

2003). In essence, arbitrators exceed their authority in issuing final awards that bind non-parties to the arbitration. See, e.g., *CrossvilleMed.Oncology,P.C.v.GlenwoodSys.,LLC*, 485 F. App'x 821, 825 (6th Cir. 2012) (finding that an arbitrator's authority does not extend to bind individuals that are not parties to the arbitration); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963).

This is especially true when the scope of relief is explicitly listed in a governing agreement. *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 652 F. Supp. 2d 862, 869 (W.D. Mich. 2009) (quoting *Detroit Auto. Inter–Insurance Exch. v. Gavin*, 416 Mich. 407, 331 N.W.2d 418, 430 (1982)) ("By ignoring express and unambiguous contract terms, arbitrators run an especially high risk of being found to have 'exceeded their powers.'"). Indeed, vacating an award is the appropriate remedy when an "arbitrator strays from interpretation of the agreement and effectively 'dispenses his own brand of industrial justice.'" *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 663 (2010) (quoting *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509, 1015, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)).

Here, it is undisputed that only CSI was a party to the EULA, not its employees, officers, or agents, and certainly not any third parties using the Bosch software. *See* **Exhibit C**, at § 1. The EULA unambiguously clarified that "You" referred to CSI as a company, and that a breach could entitle "Bosch to obtain a preliminary and/or permanent injunction ***against You***." *Id.* at § 8.1 (emphasis added). Injunctive relief is not addressed in any other provision of the EULA, nor is any form of individual liability on CSI employees, officers, or agents, much less any third parties, mentioned anywhere in the agreement.

The reality is that the parties have always known that *only CSI as an entity* entered into the EULA and that *only CSI as an entity* could be bound by the arbitrator's award. This dispute started with Bosch filing a Demand for Arbitration that intentionally only named CSI as a party and sought "permanent injunctive relief ***requiring Collision Sciences*** to comply with the EULA" along with "[p]ermanent injunctive relief ***requiring Collision Sciences*** to cease all of use of the Bosch CDR Software prohibited by the EULA." *See* **Exhibit E**, p. 19 (emphasis added). Even Bosch's pre-arbitration brief clarified that the injunctive relief sought was only against CSI, not its employees, officers, or agents on an individual basis. *See* **Exhibit F**, at p. 19-20 (seeking relief in the form of "a permanent injunction, requiring Collision Sciences…").

The EULA is clear—injunctive relief has always been limited to CSI as an entity alone, not its employees, officers, or agents on an individual basis, much less on third parties. Both parties have consistently recognized and adhered to this limitation throughout the course of this dispute. By departing from this clear limitation and dispensing his own personal brand of justice through the Award, the arbitrator unambiguously exceeded the scope of his authority. Consequently, CSI respectfully requests that this Court vacate the Award.

## II. THE ARBITRATOR DECIDED ISSUES BEYOND THOSE SUBMITTED TO HIM.

In addition, this Court has the authority to modify the Award. It should do so here, because the Arbitrator also decided issues that simply were not presented to him. Pursuant to Section 11(b) of the FAA, an award may be modified or corrected "where the arbitrators have awarded upon a matter not submitted to them[.]" 9 U.S. § 11(b). The law is well settled that "[w]hile an arbitrator has broad power to fashion remedies on issues the parties have empowered him to resolve, he lacks authority to decide questions the parties have not agreed to submit to him." *Klepper v. Osborne*, 902 F.2d 33 (6th Cir. 1990) (citing *Courier–Citizen Co. v. Boston Electrotypers Un. No. 11*, 702 F.2d 273, 281 (1st Cir.1983)).

As explained above, the parties unambiguously did *not* submit the issue of individual liability on the part of CSI's employees, officers, or agents to the arbitrator, and they certainly did not raise the question of third party liability. This

conclusion is undeniable upon review of the parties' pleadings and the plain language of the EULA. From its Demand for Arbitration to its pre-arbitration brief, Bosch consistently and explicitly sought injunctive relief against CSI as an entity. *See* **Exhibit E**, p. 19; *see also* **Exhibit F**, at p. 19-20. No mention was ever made of liability against CSI's individual employees, officers, agents, or third parties, nor would any such liability make logical sense as the EULA directly limited the possibility of injunctive relief to CSI as an entity. *See* **Exhibit C**, at § 1.

In light of these facts, it is indisputable that the arbitrator impermissibly issued an award on matters that were not submitted to him. To allow this Award to stand would undermine the integrity of the arbitration process and the parties' clear intent as expressed in their pleadings and governing agreement. Consequently, should the Court decline to vacate the Award, CSI respectfully requests it modify the Award and correct the improper injunction against CSI's employees, officers, and agents in their individual capacities, as well as removing any provision restricting third parties in any way.

### III. THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW IN ISSUING A PERMANENT INJUNCTION WITHOUT FINDING ANY HARM.

The Arbitrator similarly disregarded the law in issuing his Award. When confronted with questions of law, an arbitrator acts in manifest disregard of the law when "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle."

*Leviathan Grp. LLC*, 735 F. Supp. 3d at 828 (citing *Dawahare*, 210 F.3d at 669). Once these elements have satisfied, a district court may properly vacate an award. *Id.*

Here, the arbitrator manifestly disregarded the law in issuing a permanent injunction despite the absence of *any* harm, much less legitimate irreparable harm.[1] The law is well settled in that "[t]he equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A party seeking injunctive relief must not only show that irreparable harm is possible, but that "irreparable injury *is likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Moreover, the moving party "must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Wise Man Brewing, LLC v. Three Bridges Distillery & Taproom, LLC*, 599 F. Supp. 3d 586, 592 (E.D. Mich. 2022) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Mere apprehension of future injury is insufficient to justify injunctive relief. *Hammel v. Speaker of House of Representatives*, 297 Mich. App. 641, 651, 825 N.W.2d 616 (2012) ("It is well

---

[1] This is not simply because Bosch failed to submit any evidence of any damage of any kind, although that is certainly true; the Arbitrator literally failed to find that Bosch had suffered any damages whatsoever, much less the irreparable harm required to sustain an injunction.

settled that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural.").

Moreover, a contractual provision providing for injunctive relief upon a breach of the agreement "does not alter the court's obligation to analyze whether the party seeking an injunction has proven irreparable harm." *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-cv-15189, 2014 WL 562264, at *9 (E.D. Mich. Feb. 13, 2014); see also *Baker's Aid, a Division of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir.1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate").

Yet this is precisely how the arbitrator purported to establish irreparable harm in the Award. *See* **Exhibit D**, at p. 7. Instead of identifying any legitimate injury, the arbitrator summarily concluded irreparable harm existed simply due to CSI's breaches of the EULA. *Id.* But the law clearly requires evidence of "certain and immediate" harm before injunctive relief can be granted. *Wise Man Brewing, LLC*, 599 F. Supp. 3d at 592. CSI brought this point of law to the arbitrator's attention in both of its post-hearing briefs. *See* **Exhibit G**, at p. 17; *see also* CSI's Response to Bosch's Post-Hearing Brief, **Exhibit H**, at p. 9. Despite being aware of this standard, the arbitrator refused to heed the legal principle and awarded injunctive relief without any finding of actual harm to Bosch. As such, the award issued injunctive

13

relief in manifest disregard of the law. CSI therefore respectfully requests that this Court vacate the Award.

## **CONCLUSION**

The arbitrator here exceeded his authority when he ignored the express provisions of the EULA and issued an Award enjoining CSI's employees, officers, and agents in their individual capacity who were decidedly not parties to the agreement. Similarly, he had no authority to purport to restrict third parties who were not even parties to the EULA. Moreover, in issuing injunctive relief despite the absence of any evidence or finding of actual harm, much less *irreparable* harm, the arbitrator impermissibly fashioned relief in manifest disregard of the law. Consequently, CSI respectfully requests that this Court vacate or, in the alternative, modify the arbitration award and grant CSI any other relief this Court deems equitable and just.

Respectfully submitted,

VARNUM LLP
Attorneys for Petitioner

Dated: April 9, 2025

By: */s/ Timothy P. Monsma*
Timothy P. Monsma (P72245)
Hannah A. Cone (P87285)
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6830
tpmonsma@varnumlaw.com
hacone@varnumlaw.com

27202386