# EXHIBIT F

**AMERICAN ARBITRATION ASSOCIATION**
**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**COMMERCIAL ARBITRATION RULES**

Bosch Automotive Service Solutions Inc.,

        Claimant,

v.

Collision Sciences Inc.,

        Respondent.

Case No. 01-21-0016-2306

Judge Arbitrator: Thomas W. Cranmer

**<u>CLAIMANT'S PRE-HEARING
BRIEF</u>**

## I.     INTRODUCTION

This dispute involves the misuse by Collision Sciences Inc. ("Respondent" or "CSI") of Bosch Automotive Service Solutions Inc. ("Claimant" or "Bosch") CDR Tool Software in violation of two End User License Agreements (EULAs) that govern such use.

Bosch is the world leader in Event Data Recorder ("EDR") information and imaging technology. An EDR is a device installed in a motor vehicle to record technical vehicle and occupant information for a brief period of time before, during and after a crash. Since 2000, Bosch has developed and sold Crash Data Retrieval ("CDR") products, which allow for the retrieval and analysis of EDR data from vehicles involved in crashes. Most North American automakers, which are required by law to provide an available mechanism to extract EDR data, partner with Bosch to provide this capability.

Bosch's CDR Tool products include hardware and specialized cables for connecting a personal computer to a vehicle, and software for retrieving, analyzing, and reporting the vehicle's EDR data. The CDR Tool hardware and yearly subscriptions for the CDR Tool Software are available in North America through Bosch's exclusive distributor. The customers of Bosch's CDR products include law enforcement, crash investigators, auto manufacturers, insurance companies, fleet owners, and government agencies.

CSI was formed in 2015. That same year, CSI purchased the first of three one-year license subscriptions for the Bosch CDR Tool Software. CSI, however, did not purchase the license in order to use the Bosch CDR Tool Software as intended – *i.e.*, for connecting to vehicles and obtaining EDR analysis reports – but instead to reverse engineer the Bosch software and create its own competing service offering its own branded crash reports.

CSI's actions included developing a software tool called "CDR Replay," which CSI described as a virtual vehicle EDR. CDR Replay functions by feeding already obtained EDR

data into the Bosch CDR Tool Software in order to produce the Bosch software's output file and crash report. During this process, CDR Replay monitors and records the data requests sent by the Bosch CDR Tool Software in response to the existing EDR data. By recording the data requests using result data from a real vehicle, CSI was able to build a database of the Bosch software's commands and protocols that CSI could then use to support its own EDR data retrieval tool.

Using the database of commands and protocols obtained through its use of CDR Replay and the Bosch CDR Tool Software, CSI eventually developed a mobile application called "CrashScan" for wirelessly collecting EDR data from vehicles. The CrashScan application allows users to scan and transmit vehicle data to CSI's servers, and then obtain a "crash report" for the vehicle via a download link received by email from CSI.

CSI's use of CDR Replay and the Bosch CDR Tool Software did not stop after the introduction of the CrashScan application. CSI continues to use the CDR Replay tool in order to keep its CrashScan application updated with new vehicles, to verify and troubleshoot CrashScan's results, and even to provide the Bosch CDR Tool Software reports to its customers using the data obtained through the CrashScan application.

By installing and activating the Bosch CDR Tool Software, CSI entered into multiple EULAs with Bosch for the use of the software. The EULAs are binding contracts that governed how CSI was permitted to use the CDR Tool Software. The operative EULAs in this arbitration prohibit, among other things, creating derivative works, reverse engineering, using the Bosch CDR Tool Software with connections other than the Bosch CDR Tool Hardware, obtaining data via remote or wireless transmission, and using the Bosch CDR Tool Software in any way that competes with Bosch's products or services.

CSI's actions in using the Bosch CDR Tool Software with its CDR Replay tool to create, update and support its own CrashScan application to sell competing crash data reports violate multiple prohibitions contained in the EULAs that CSI agreed to. CSI violated the express terms of the EULAs by reverse engineering the Bosch CDR Tool Software, creating a derivative work through its CDR Replay tool, using the software without being directly connected to a vehicle, using the software via remote transmission of data, and employing the software to verify and improve CSI's own product. Further, CSI markets its product as a direct replacement for Bosch's CDR Tool, even emphasizing its similar functionality and cost savings.

Having built its CrashScan application through its illegal use of the Bosch CDR Tool Software, CSI was spared the expense and time that Bosch has put into developing and updating the CDR Tool for more than 20 years, and thus gaining an unfair advantage at Bosch's expense. CSI has also avoided the considerable effort required to ensure that its product adheres to the strict specifications and exacting standards required by vehicle OEMs in order to ensure the reliability of vehicle EDR data and analysis. CSI's supply of a product that frequently must be verified by the unlicensed use of the Bosch CDR Tool Software has the potential for tainting the entire field of crash data retrieval.

As a result of the above, as described more fully below, CSI is liable to Bosch for breach of the EULAs. CSI's ongoing, systematic breaches of the EULAs have caused and will continue to cause irreparable harm to Bosch, including potential loss of market share, damage to its competitive position, and unauthorized use of its proprietary technology. Bosch seeks to hold CSI accountable for these breaches, to remove CSI's tainted product from the marketplace, and to prevent further unauthorized use of its software.

## II.  BACKGROUND FACTS

### A.  Bosch's CDR Tool Software.

Bosch's CDR Tool Software is a specialized program designed to retrieve, decode, and analyze EDR information from vehicles involved in accidents. The software works in conjunction with Bosch's CDR hardware, including specialized connecting cables that provide a physical connection between a PC and a vehicle's electronic control module(s). Bosch's CDR hardware can be connected to a vehicle's Diagnostic Link Connector ("DLC") (aka an OBD II port), or directly to an electronic control module, such as an air-bag control module. The CDR Tool Software supports a wide range of vehicle makes and models, providing detailed reports on various parameters such as vehicle speed, brake application, throttle position, and airbag deployment.

The Bosch CDR Tool Software relies on its comprehensive database, allowing it to retrieve EDR data from thousands of different motor vehicles. The database is based on proprietary specifications and protocols from each OEM for how and where a particular vehicle's EDR data can be accessed, and how to interpret that data once retrieved. This database is the result of extensive collaboration between Bosch and the OEMs and represents a significant investment of time and resources by Bosch. Bosch regularly updates both the software and its underlying database to include support for new vehicle models, refine data interpretation algorithms, and enhance overall capabilities, ensuring the CDR Tool remains current and accurate. The software's ability to produce standardized, court-admissible reports has made it a crucial resource in legal proceedings and insurance claim investigations related to vehicle accidents.

**B.    CSI's Purchase of Bosch Software Licenses and Acceptance of EULA Terms.**

CSI purchased multiple licenses for Bosch's CDR Tool Software over a period of years, each time agreeing to the terms of the applicable EULA. Specifically, CSI acquired one-year license subscriptions on October 27, 2015, January 26, 2018, and July 9, 2019. Each subscription came with an activation certificate for the then current version of the software and allowed CSI access to every subsequent version, with a corresponding activation certificate, released during the one-year term. With each license subscription purchase and subsequent software activation, CSI was required to explicitly accept the terms of the corresponding EULA.

CSI's CEO Jason Bayley personally purchased the license subscriptions from Bosch's distributor and received the activation certificates via email. Upon receipt, Mr. Bayley would forward the certificates to CSI's Chief Technology Officer Brian Hsu and expected him to use the certificates to activate the software.

**C.    CSI's Misuse of Bosch's CDR Tool Software**

CSI repeatedly and systematically misused Bosch's CDR Tool Software in order to compete against Bosch. First, CSI created a software tool called CDR Replay, which acts as a virtual vehicle control module to simulate the Bosch CDR Tool Software being connected to a vehicle. According to CSI's CEO Jason Bayley, CDR Replay feeds data to the Bosch CDR Tool Software to interpret raw hex data stored on the module. Thus, as its name implies, CSI's CDR Replay tool relies on and incorporates the Bosch CDR Tool Software to accomplish its essential function. CSI used the CDR Replay tool, along with packet-sniffing software called BUSMASTER, to intercept and interpret messages sent to and from the Bosch CDR Tool Software, essentially to figure out which requests were sent by the software to retrieve EDR data for a particular vehicle make and model.

CSI built a database of the data requests sent by the Bosch CDR Tool Software in order to create its own mobile software application. The application, called CrashScan, connects wirelessly to a vehicle, sends the data requests from CSI's database to the vehicle, retrieves the EDR data, and transmits it to CSI's servers. There, the data is formatted into a CSI-branded crash report and sent back to the user via an email download link. CSI performs a manual quality check on every crash report requested by a user of its CrashScan application, and frequently uses its CDR Replay tool to feed the retrieved data into the Bosch CDR Tool Software as a check against the data appearing in its CSI-branded report. In fact, CSI's internal procedures actually require that the Bosch CDR Tool Software be used to check the CSI-branded reports in certain situations, such as for vehicles requiring a particular cable connection. When CSI discovers a discrepancy between its own report and a Bosch CDR Tool Software report, CSI will use the results of CDR Replay to make modifications to its CrashScan application.

On several occasions, typically at the request of a customer, CSI utilized its CDR Replay tool to create a Bosch CDR Tool Software crash report from the data the customer retrieved remotely using the CrashScan application.

### D.    The Audit of CSI's Use of Bosch CDR Tool Software

Bosch initially requested an audit of CSI's use of the CDR Tool Software in a notice letter dated July 14, 2020, citing the audit provision in the EULA. After prolonged negotiations and CSI's perceived lack of cooperation, Bosch filed its Demand for Arbitration on August 20, 2021. The audit question was submitted to a mediator, but the parties could not reach an agreement on the protocol to be used in the audit. The audit was ultimately ordered by the Arbitrator on April 20, 2022, following Bosch's Request for Interim Measures. At CSI's request, the audit was conducted by a third-party forensic investigator remotely over several months, with

the final audit report being issued on July 31, 2023. The cost of the audit paid by Bosch was $111,501.80.

The EULA stipulates that if unauthorized use of the Software is proven, Bosch is entitled to reimbursement for the reasonable cost of the audit.

## III.    RELEVANT EULA PROVISIONS

Between 2015 and 2019, CSI purchased three one-year license subscriptions of the Bosch CDR Tool Software. Each subscription entitles the purchaser to receive all versions of the software released during the one-year term of the license. During the three license terms, CSI had access to versions of the software governed by four different EULAs. In this arbitration, Bosch asserts breaches of two of those EULAs, as detailed below.[1]

### A.    The April 11, 2017 EULA

On January 26, 2018, CSI purchased a one-year license subscription to the Bosch CDR Tool Software and received an activation certificate for version 17.6 on the same day. The software was activated several days thereafter. This license is governed by the EULA dated April 11, 2017, which was in effect for software versions 17.3 – 17.7 (the "2017 EULA") (**Hrg. Ex. 1**). The 2017 EULA is applicable from the time CSI activated the license until July 31, 2018, when version 17.8 of the Bosch CDR Tool Software was released. This license entitled CSI to receive updates through version 17.10.

The 2017 EULA prohibits users from preparing derivative works:

1.3. "Except for the right of use pursuant to Article 1.1, Licensor reserves all rights for the Licensed Software, in particular exclusive right to reproduce, to distribute, **to prepare derivative works** therefrom and to publicly display Licensed Software." (Emphasis added.)

---

[1] While the Arbitrator has ruled that Bosch can only pursue claims for breach of two of the four EULAs, CSI's use of software versions governed by different EULAs demonstrates a pattern and intent to accept the EULA when activating the software.

**B.     The May 19, 2019 EULA**

On July 9, 2019, CSI purchased another one-year license subscription and received an

activation certificate for version 19.0 of the Bosch CDR Tool Software. The software was

activated the following day. This license is governed by the EULA dated May 31, 2019, which

has been in effect since the release of version 19.0 of the Bosch CDR Tool Software (the "2019

EULA") (**Hrg. Ex. 2**). This license entitled CSI to receive updates through version 19.4 of the

Bosch CDR Tool Software.

The relevant portions of the 2019 EULA include:

2.2. Delivery and Installation.

> 2.2.1. Provided you retain a valid Subscription issued by the Bosch CDR
> Software License Service (VLMS), You may implement activation of the
> Software only on the Designated Equipment provided that the Designated
> Equipment meets the minimum requirements according to Bosch's
> recommendations as outlined in the Related Materials. "Related
> Materials" shall mean all materials other than the Software furnished by
> Bosch and including, for example, Getting Started Guide, CDR Help File,
> instructional documentation, guides, and all permitted copies of such
> material made by Licensee. **Connections to vehicles and or electronic
> control units (ECU) for the purposes of retrieving data must be done
> by directly connect the CDR tool to the vehicle or ECU using CDR
> tool cables and/or adaptors approved by Bosch. Any connections to a
> vehicle or ECU through additional hardware and software which is
> not part of the CDR tool is prohibited including, but not limited to,
> indirectly connecting the CDR tool through a wireless OBDII
> communications device, enabling remote connection to CDR tools
> over a server or internet server.**

2.3. Restrictions on Your Use of the Software. The Software or its components
may be used only as expressly authorized in this EULA, and in no other way. **You
expressly agree NOT to**:

> 2.3.1. In whole or in part, alter, copy, disassemble, decompile, **reverse
> engineer**, decode, or otherwise attempt to access or derive the source code
> or architectural framework of the Software;

> 2.3.3. Unless otherwise agreed in writing by Bosch, use the Software as
> server software for making the Software available for **multiple users**
> (simultaneous use) **over a network**, install it on a server and allow users

to access to the Software **remotely** for the purpose of multi-user access, or install the software on a device for use only by **remote users**;

2.3.5. Modify in any way or prepare **derivative works** of the source or object code of the Software;

2.3.7. Use or permit any other person to use the Software in any way that **competes with Bosch's** products or services, except as expressly permitted by applicable law;

2.4. Except for the right of use pursuant to Section 2.1, **Bosch reserves all rights for the Software**, **in particular exclusive right to** reproduce, to distribute, **to prepare derivative works therefrom** and to publicly display the Software.

6. TERM/ DURATION

6.3. **This EULA shall automatically terminate immediately and without notice to You if: (a) You fail to comply with any of the terms and conditions of this EULA**. In such event, You must return, destroy, erase, and/or delete all copies of the Software, in their entirety, that are in your custody or control; or (b) You purchase an activation certificate to enable additional functionality of the Software at which time the terms and conditions of the Activation EULA will supersede this EULA.

8.1. You acknowledge and agree that parts of the source code for the computer programs underlying the Software are a Bosch trade secret. You agree that any efforts by You to **reverse engineer**, decode decompile, disassemble or otherwise attempt to access or derive the source code or architectural framework of the Software, or any other efforts to learn the contents of such source code, data bases or resource files and applications could result in Your access to or knowledge or disclosure of such trade secrets without Bosch's permission, and that such access, knowledge, or disclosure could violate Bosch's trade secret rights and cause Bosch immediate and irreparable injury, entitling **Bosch to obtain a preliminary and/or permanent injunction** against You. (Emphasis added.)

## IV.     LEGAL STANDARD

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in [injury] to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.,* 495 Mich. 161, 178, 848 N.W.2d 95 (2014). "Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Van Buren Charter Twp. v. Visteon Corp.,* 904 N.W.2d 192, 202 (Mich. Ct. App. 2017) (*citing Meagher v. Wayne State*

*Univ.,* 565 N.W.2d 401 (Mich. 1997)). Clear and unambiguous contractual language must be enforced as written. *Holland v. Trinity Health Care Corp.,* 791 N.W.2d 724 (Mich. 2010). Under Illinois law, the essential elements of a breach of contract claim are: "(1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resultant injury to the plaintiff." *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC,* 2016 IL App (1st) 142754, ¶85, 59 N.E.3d 41, 64 (2016).

## V.     ARGUMENT

### A.     Both the 2017 EULA and the 2019 EULA are valid and enforceable contracts.

Since at least 2010, and during the entire term of each license subscription purchased by CSI, activation of the Bosch CDR Tool Software has required an activation certificate provided directly by Bosch. During the process of uploading the activation certificate into the software, the program displays a dialog box with the contents of the EULA, allowing the user to scroll through the entirety of the document. The user is then required to check the box next to the words "I accept," and click the "continue" button for the software to be activated and fully functional. Contracts such as this are considered "clickwrap" agreements, and are routinely found to be enforceable contracts. *See Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013) (clickwrap agreements "require the user to manifest assent to the terms by clicking on an icon"); *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 U.S. Dist. LEXIS 119855, at *4 (E.D. Mich. July 7, 2022) ("Courts have routinely found 'clickwrap' agreements enforceable because by checking a box explicitly stating 'I agree' in order to proceed, the 'consumer has received notice of the terms being offered and, in the words of the Restatement, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms.").

After each purchase of a license subscription for the Bosch CDR Tool Software, CSI activated the software and began using it within days. During each activation, CSI was presented with the terms of the applicable EULA and had to accept those terms in order to continue using the software. The fact that it did use the software is conclusive evidence that it agreed to both the 2017 EULA and the 2019 EULA.

**B.      CSI breached both the 2017 EULA and the 2019 EULA.**

### 1.      CSI created a derivative work of the Bosch CDR Tool, in violation of both the 2017 EULA and the 2019 EULA.

Under both the 2017 EULA and the 2019 EULA, Bosch reserves the exclusive right to create a derivative work of the Bosch CDR Software. **Hrg. Ex. 1, ¶1.3**; **Hrg. Ex. 2, ¶2.4**. The 2019 EULA also expressly prohibits the creation of a derivative work by the licensee. **Hrg. Ex. 2, ¶2.3.5**.

CSI's CDR Replay tool constitutes a derivative work of Bosch's CDR Tool software and its underlying database, both of which are integral to Bosch's proprietary system for retrieving, decoding, and analyzing EDR information from vehicles involved in accidents. Central to the software's functionality is Bosch's comprehensive and proprietary database. This database is essential to the accurate analysis provided by the Bosch CDR Tool Software. CSI's CDR Replay tool, developed through reverse engineering of Bosch's CDR Tool Software and database, heavily relies on Bosch's proprietary data structures, protocols, and interpretation methods to replicate the functionality of Bosch's software. The CDR Replay tool's ability to produce reports that mirror those generated by Bosch's CDR Tool Software underscores that CDR Replay is derived from Bosch's original work, particularly given its dependence on the same underlying database that Bosch painstakingly developed and maintains. The CDR Replay tool's transformation of Bosch's protected software and database components into a new, yet

fundamentally reliant tool, meets the legal criteria for a derivative work, as it adapts and recasts Bosch's original expressions without achieving independent originality.

A derivative work is one that is based upon one or more preexisting works. *S&S Innovations Corp. v. UUSI, LLC*, No. 1:18-cv-1377, 2021 U.S. Dist. LEXIS 70, at *32 (W.D. Mich. Jan. 4, 2021). When a software program is built to run with an already existing software program, and especially when it cannot function without that underlying program, it is considered a derivative work. *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 747 (E.D. Mich. 1998) (finding that a software program that was created to work with and on top of an underlying software program, and that could not function without the underlying program, was a derivative work). There can be little doubt that CSI's CDR Replay, specifically to decipher the operation of the Bosch CDR Tool Software, is a derivative work of the Bosch software. CSI was not authorized to create it, and thus has breached both the 2017 EULA and the 2019 EULA.

### 2. CSI's CDR Replay Allows for the remote operation of Bosch's CDR Tool Software.

The 2019 EULA expressly prohibits the use of remote operation of Bosch's CDR Tool Software. **Hrg. Ex. 2, ¶¶ 2.2.1, 2.3.3**.

CSI used the Bosch CDR Tool Software via remote and wireless transmission in clear violation of the 2019 EULA's terms. CSI's CrashScan application wirelessly connects to vehicles to extract crash data and then transmits that data remotely to CSI's servers. Once on the servers, this data can be, and is frequently processed using CSI's CDR Replay tool, which relies on and incorporates the Bosch CDR Tool Software. This setup allows CSI use Bosch CDR Tool Software to produce Bosch-branded CDR reports without a direct physical connection to the vehicle, as required by the Bosch EULA. CSI has touted its ability to produce the Bosch-branded CDR reports using data retrieved wirelessly through the mobile CrashScan application. It is not

uncommon for a customer of CSI to request a Bosch-branded CDR report for a vehicle scanned using CSI's application, and for CSI to provide that report. CSI also makes extensive use of the Bosch-branded reports to verify the results produced by its CrashScan application and make modifications to the application. CSI has even established internal requirements that certain crash reports must be manually checked using its CDR Replay tool because of perceived unreliability.

CSI's remote and wireless use of the Bosch CDR Tool Software directly contravenes the EULA, which explicitly prohibits "indirectly connecting the CDR tool through a wireless OBDII communications device, enabling remote connection to CDR tools over a server or internet server." By implementing this wireless and server-based system, CSI has used the Bosch CDR Tool Software in a manner expressly forbidden by the terms of the license agreement.

### 3. CSI used the CDR Tool Software to compete with Bosch's products or services

The 2019 EULA expressly prohibits the use of the CDR Tool Software to compete with Bosch's products or services. **Hrg. Ex. 2, ¶¶2.3.7, 2.4**.

Since at least 2017, CSI's CEO Jason Bayley has been actively marketing CSI's software product as a direct competitor to, and a replacement for, Bosch's CDR Tool Software with claims that it is significantly lower in cost, is simpler to use, and easier to understand the reports. On numerous occasions, CSI sent to potential customers both its own crash report and a Bosch-branded CDR report produced using the same data obtained through the CrashScan application, and invite the potential customer to compare the reports. Furthermore, CSI used the Bosch-branded report as a verification that the CSI crash report contained accurate data and analysis.

Throughout 2020-2022, CSI repeatedly continued to use the Bosch CDR Tool Software to verify its own product's accuracy and to produce Bosch-branded reports for potential

customers. CSI's marketing efforts positioned its product as a cost-effective alternative to Bosch's CDR tool, explicitly claiming it could eliminate the need for Bosch's hardware and software. This use of the Bosch software, in unquestionably direct competition with Bosch, coupled with the alleged unauthorized use of Bosch's technology, is expressly contrary to the terms of the 2019 EULA, and constitutes a breach by CSI.

### 4. CSI Reversed Engineered Bosch's CDR Tool Software to make its CDR Replay tool and to create its database.

The 2019 EULA expressly prohibits reverse engineering of the Bosch CDR Tool Software. **Hrg. Ex. 2, ¶¶2.3.1, 8.1**.

Reverse engineering is defined as a "process of discovering how an invention works by inspecting and studying it, esp. by taking it apart in order to learn how it works and how to copy it and improve it." *Reverse-engineering*, Black's Law Dictionary (11th ed. 2019). The United States Supreme Court has defined reverse engineering as the process of "starting with the known product and working backward to divine the process which aided in its development or manufacture." *Kewanee v. Bicron*, 416 U.S. 470, 476 (1974); *see also Fleet Eng'rs v. Tarun Surti & Mudguard Techs.*, No. 1:12-cv-1143, 2017 U.S. Dist. LEXIS 229222, at *12 (W.D. Mich. June 8, 2017). Brian Hsu, CSI's Chief Technology Officer, has a similar understanding of the meaning of reverse engineering, as "figuring out how something works."

CSI unambiguously reversed engineered the Bosch CDR Tool Software to develop and update their products. CSI's development of the CrashScan application and CDR Replay tool replicate key functionalities of Bosch's proprietary software, particularly in interpreting crash data from vehicle ECUs. CSI's CDR Replay tool system is the use of BUSMASTER software, which acts as a packet-sniffer to intercept, interpret, and display messages sent to and from the Bosch CDR Tool Software. This setup allows CSI to observe and analyze the data exchange

between Bosch's software and vehicle modules, which in turn enables CSI to replicate the Bosch

CDR Tool Software's communication protocols and data structures. By monitoring the data flow

through the OBDII port, CSI gained insights into how Bosch's CDR Tool Software

communicates with the multitude of vehicle engine control units installed in thousands of

different makes and models.

Furthermore, CSI's ability to rapidly add support for new vehicle models and ECUs in

CrashScan is dependent on CSI's ongoing reverse engineering of Bosch's software. That is,

CrashScan's functionality depends entirely on its ability to mimic the observable operations of the

Bosch's CDR Tool Software and database, which it has reverse-engineered. This means that

CrashScan cannot analyze any new vehicles that require a new update to the CDR Tool Software

and database without first reverse engineering those updates.

CSI continues to use its CDR Replay tool to reverse engineer and duplicate the functions

of Bosch's software. For example, Mr. Hsu admitted that CSI was forced to use CDR Replay,

including the BUSMASTER component, for a newly released 2020 Ford Explorer because CSI's

CrashScan software did not retrieve sufficient data from the vehicle.

### C.     Bosch is entitled to at least nominal money damages

The United States Supreme Court has ruled that nominal damages are damages awarded

by default until the plaintiff establishes entitlement to some other form of damages, such as

compensatory or statutory damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290 (2021).

Similarly, Michigan courts have ruled that nominal damages can be awarded when a breach is

established but does not result in quantifiable harm or when the harm cannot be proven with

reasonable certainty. *Kolton v. Nassar*, 358 Mich. 154, 158, 99 N.W.2d 362, 364 (1959); *Hoover*

*Invs., Inc. v. City of Charlotte*, No. 1:04-CV-689, 2006 U.S. Dist. LEXIS 20776, at *8 (W.D.

Mich. Apr. 18, 2006) (finding nominal damages based solely on the breach of contract); *Viking*

*Grp, Inc. v. Bruckman*, No. 347778, 2020 Mich. App. LEXIS 3237, at *8 (Ct. App. May 7, 2020) (holding that nominal damages are recoverable upon proof of a breach of contract.). Thus, even if a direct harm cannot be established, which it has been established multiple times above, Bosch is still entitled to nominal damages based on CSI's many breaches of the EULA.

> **D.     The Software Audit demonstrated unauthorized use of the Bosch CDR Tool Software by CS.**

The 2019 EULA required CSI's cooperation with an audit of CSI's use of the Bosch CDR Tool Software. The audit revealed that CSI engaged in unauthorized use of the Bosch CDR Tool Software, violating the terms of the EULA. A key finding was CSI's use of packet-sniffer software called BUSMASTER, which was used to intercept, interpret, and display messages sent to and from the Bosch CDR Tool Software. This unauthorized monitoring allowed CSI to gain insights into the internal workings of Bosch's proprietary software so that CSI could duplicate its functions. The audit also uncovered CSI's CDR Replay tool, which relied on and incorporated elements of the Bosch CDR Tool Software without permission. Furthermore, evidence suggested that CSI used the Bosch software to verify and improve its own competing product, CrashScan, by comparing outputs and making adjustments based on the Bosch software's performance. The audit further revealed instances where CSI generated Bosch-branded reports using remotely collected data, a clear violation of the EULA's restrictions on remote and wireless use. Additionally, CSI's rapid adoption of support for new vehicle models shortly after Bosch's updates pointed to ongoing unauthorized analysis and potential reverse engineering of the Bosch software. CSI's creation of derivative works based on CDR Tool Software and database is also a violation of both EULAs. These findings collectively demonstrated a pattern of unauthorized use that extended far beyond the scope of the EULAs.

As the audit process uncovered multiple instances of CSI's unauthorized use of the Bosch CDR Tool Software, Bosch is entitled an award of the costs of the audit.

### E.      A permanent injunction is warranted in these circumstances.

A plaintiff seeking a permanent injunction must demonstrate that: "(1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Irreparable injury is defined as "an injury that cannot be adequately measured or compensated by money." *Cellnet Comm'ns, Inc. v. New Par*, 291 F. Supp. 2d 565, 569 (E.D. Mich. 2003) (citations omitted). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). The loss of customer goodwill and competitive position may constitute irreparable harm. *FirstEnergy Solutions Corp. v. Flerick*, 521 Fed. Appx. 521, 529 (6th Cir. 2013).

Here, the parties agreed that CSI's specific breaches of the 2019 EULA constitute irreparable harm. Pursuant to paragraph 8.1 of the 2019 EULA, CSI acknowledged that any efforts to reverse engineer the Bosch CDR Tool Software, "*or any other efforts to learn the contents of such source code, data bases or resource files and applications*," could result in access to or knowledge of Bosch's trade secrets without permission, and that such access could cause Bosch irreparable injury, entitling Bosch to obtain a permanent injunction. **Hrg. Ex. 2, ¶8.1**. This contractual provision supports a finding of irreparable harm. *York Risk Servs. Grp.,*

*Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019); *J.P. Morgan Sec., LLC v. Duncan*, No. 2:22-cv-11732, 2022 U.S. Dist. LEXIS 143924, at *15 (E.D. Mich. Aug. 11, 2022).

Additionally, Bosch has suffered irreparable injury due to CSI's unauthorized use, reverse engineering of its proprietary CDR Tool Software, and creation of a derivative work. The use of packet-sniffer software like BUSMASTER to intercept and analyze Bosch's software communications represents a significant threat to Bosch's competitive advantage that cannot be adequately measured or compensated by money alone. Second, monetary damages are inadequate to fully compensate for this injury, as the potential ongoing and future misuse of Bosch's proprietary information could lead to long-term market erosion and loss of technological edge. Third, the balance of hardships favors Bosch, as CSI's unauthorized activities threaten Bosch's substantial investment in its software, while CSI would only be required to cease unlawful behavior. Finally, the public interest is served by protecting intellectual property rights and enforcing contractual obligations, which promotes innovation and fair competition in the marketplace. Given the nature of software and database and the ease with which it can be replicated and distributed, allowing CSI's conduct to continue unchecked poses a significant risk of further irreparable harm to Bosch. Therefore, a permanent injunction is not only appropriate but necessary to prevent ongoing and future violations of Bosch's rights under the EULA and to protect its valuable intellectual property.

## VI.    CONCLUSION

For all of these reasons above, Claimant Bosch Automotive Service Solutions Inc., urges the Arbitrator to enter an award granting to Claimant:

      **(a)**     A permanent injunction, requiring Collision Sciences to:

              i.   Cease all use of any version of Bosch's CDR Tool Software;

ii. Cease using CSI's CDR Replay tool, which is irretrievably intertwined with the unauthorized use of the Bosch CDR Software; and

iii. Either cease offering its CrashScan application, ***or***, alternatively, permanently expunge from it all portions built with, or which rely on, any information or data obtained through the unauthorized use of the Bosch CDR Tool Software;

**(b)** Compensatory damages in an amount to be determined at Arbitration;

**(c)** Nominal damages in an amount to be determined at Arbitration;

**(d)** Reimbursement of the costs of the software audit conducted pursuant to the 2019 EULA; and

**(e)** any other or additional relief that the Arbitrator deems just and appropriate.

Dated: September 3, 2024        Respectfully submitted,

Steven McMahon Zeller
Diego F. Freire
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
Fax: (312) 876-1155
SZeller@dykema.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via e-mail on this 03th day of September, 2024 on the Arbitrator, counsel for Respondent, Collision Sciences, Inc., and the case administrator, as indicated below, with a copy sent by U.S. Mail.

DYKEMA GOSSETT PLLC

By: *Steven McMahon Zeller*

Steven McMahon Zeller
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 627-2272
szeller@dykema.com
COUNSEL FOR CLAIMANT

**SERVICE LIST**

Thomas W. Cranmer
Arbitrator
Miller Canfield
840 W. Long Lake Road, Suite 150
Troy, Michigan 48098
cranmer@MillerCanfield.com

ARBITRATOR

Timothy P. Monsma
Varnum LLP
333 Bridge Street NW, Suite 1700
Grand Rapids, Michigan 49504
tpmonsma@varnumlaw.com

COUNSEL FOR RESPONDENT

Rafael Carlos del Rosal Carmona
Director
American Arbitration Association
120 Broadway, 21st Floor,
New York, NY 10271
RafaelCarmona@adr.org

CASE ADMINISTRATOR

PLEASE READ THIS DOCUMENT CAREFULLY BEFORE ACCEPTING THE LICENSE AGREEMENT TERMS.

BY ACCEPTING THE TERMS OF THIS AGREEMENT BELOW, YOU AGREE TO BECOME BOUND BY THE TERMS OF THIS LICENSE. IF YOU DO NOT AGREE TO THE TERMS OF THIS LICENSE, DO NOT USE THE SOFTWARE AND PROMPTLY REMOVE THE SOFTWARE PACKAGE WITHIN 10 DAYS OF RECEIVING A REFUND.

This agreement is Between

Bosch Automotive Service Solutions Inc.

2030 Alameda Padre Serra, Suite 300

Santa Barbara, CA  93103

- Hereinafter called "Licensor" -

And

You, the CDR Software Subscriber,

- Hereinafter called "Licensee" -

1. Delivery of Software products

1.1. The Licensor grants to Licensee, by clicking "I accept the agreement" below, the non-exclusive and non-transferable right to use this CDR Software selected and purchased through a Subscription Purchase by Licensee (hereinafter referred to as "Licensed Software") which was released to the general public during the Licensee's Subscription Period.  One License is granted for One Software Subscription. A Subscription Period shall mean the Subscription Term selected by the Licensee at the time of purchase or renewal, which term may be 1 or 3 years from the time of purchase, or other lengths of time permitted by the Licensor.  The  granted license is restricted to the use of the Licensed Software on Designated Equipment.  Designated Equipment shall mean  no more than one personal computer per Licensee and such computer equipment to be identified by Licensee as the equipment upon which Licensee is the primary user and intends the Licensed Software to be used.

1.2 Back Up or Alternate Computer - the License Software may be installed on a second computer for a single License for Back Up or Alternate use by the Licensee. Both installations for a single License shall not be used concurrently or in the  same manner as a second License. The second installation is intended for the Licensee to use when one computer is not in use.

1.3. Except for the right of use pursuant to Article 1.1, Licensor reserves all rights for the Licensed Software, in particular exclusive right to reproduce, to distribute, to prepare derivative works therefrom and to publicly display Licensed Software.

2. Delivery/ Installation

  Licensee shall implement the installation of the Licensed Software on the Designated Equipment which has to meet minimum requirements according to Licensor's recommendation as outlined in the Related Materials.   Related Materials shall mean all materials other than the Licensed Software furnished by

Hrg Ex

1

Licensor and including, for example, Getting Started Guide, CDR Help File, instructional documentation, guides, and all permitted copies of such material made by Licensee.

3. Delivery

3.1. Licensor shall provide Licensed Software to the Licensee after receipt of Licensee's payment for the agreed upon sales price of the software and/or software subscription update. CDR Licensed Software Updates which are available to the Licensee during the subscription period will be delivered to the licensee through the mail system or made available via download from the internet.

3.2. Part-delivery and appropriate accountings shall be accepted if reasonable in scope.

3.3. Changes of delivery or billing address shall promptly be provided in writing to Licensor.

4. Terms of payment and Prices

4.1. Licensor reserves the right to increase prices for any renewal subscriptions. Licensee may refuse to purchase a renewal subscription in the event of price increase. Any failure to renew the subscription will have no effect on the rights granted to Licensee related to Licensed Software which have already been paid for, submitted and activated shall continue until the end of the currently paid-for subscription period. The CDR software will continue to operate as intended if the user decides not to renew their subscription however; the Licensee will not receive software updates after their subscription expires.

5. Warranty

5.1. Licensor shall replace any defective media provided that Licensee promptly returns such defective media to Licensor along with a copy of the corresponding invoice.

5.2. Licensor does not warrant the accuracy and completeness of the data. All information and data of this program have been acquired by means of Licensor documents, vehicle manufacturers and industry experts. Licensor makes no warranty because it can not fully exclude amendments, country specific variations, errors or mistakes due to the extensive material of data.

Therefore, in each individual case, it shall be assured by Licensee that the vehicle identification as well as the equipment used to read crash data from ECUs on a given vehicle corresponds to the data of the Licensed Software.

5.3. LICENSOR DOES NOT WARRANT THAT THE LICENSED SOFTWARE OR USE THEREOF WILL BE COMPATIBLE WITH EACH VEHICLE MODEL OR IN

CONNECTION WITH OTHER PROGRAMS ON THE SAME COMPUTER. THE WARRANTIES SET FORTH IN THIS SECTION 5 IS IN LIEU OF ALL OTHER

WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

LICENSOR ASSUMES NO LIABILITY FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS AND LOSS OF DATA, EXCEPT AS SPECIFICALLY SET OUT HEREIN. THE REMEDIES SET FORTH IN THIS SECTION REPRESENT LICENSEE'S SOLE AND EXCLUSIVE REMEDIES FOR ANY BREACH OF WARRANTY BY LICENSOR.

BOSCH002828

5.4. THIS INFORMATION SUPPLIED UNDER THIS LICENSE HAS BEEN COMPILED FOR USE ONLY BY VEHICLE MANUFACTURER PRODUCT EXPERTS, ENGINEERS AND PROFESSIONAL ACCIDENT INVESTIGATION & RECONSTRUCTION SPECIALISTS AND ASSUMES AN APPROPRIATE LEVEL OF SKILL AND COMPETENCE.

5.5. Licensee shall promptly inform Licensor of any defect in the Licensed Software and submit the appropriate information to enable the Licensor to correct the defect. Licensor shall, at its sole option; correct the defects discovered in the Licensed Software or deliver a new version of the Licensed Software.

5.6. In the event Licensor cannot detect the defect or the defect resulted from misuse or other circumstances that are beyond Licensor's control, Licensee shall bear any costs incurred in the correction of the defect. LICENSOR SHALL NOT BE LIABLE FOR ANY DEFECTS IN THE EVENT THAT LICENSEE OR A THIRD PARTY MODIFIES THE LICENSED SOFTWARE UNLESS LICENSEE PROVIDES EVIDENCE THAT THE CHANGES DID NOT INFLUENCE OR PRODUCE THE DEFECT.

5.7. Licensee may terminate this Agreement if Licensor is not able to correct material defects in the Licensed Software after several attempts within reasonable period of time.

6. Liability

6.1. In no event shall Licensor be liable for damages arising out of or related to incorrect, incomplete or misinterpreted Licensed Software and/or data. Licensee shall take care to ensure that data supplied hereunder is applicable to the vehicle ECU, the system(s) and the vehicle the data was retrieved from.

6.2. In no event shall Licensor be liable for incidental, consequential, special or punitive damages arising from or related to the Licensed Software or use thereof, Licensor's performance or failure to perform any of its obligations hereunder, whether the claims be in contract or tort, including negligence or strict liability. Licensee's sole and exclusive remedy after acceptance of the Licensed Software shall be the remedy available under the warranty provision.

6.3. Licensee shall appoint only qualified staff and use appropriate test equipment or tools to use the Licensed Software. Where applicable, Licensor recommends the use of appropriate test equipment and tools as specified in the vehicle manufacturer's issued service manuals.

6.4. Licensor shall not be responsible for any damage claim arising from Licensee's failure to comply with the provisions of this Agreement.

7. Term/ Duration

7.1. The License Agreement term for this software version remains in effect as long as the Licensee keeps the installed software on Designated Equipment or is in compliance with section 1.1 and 1.2 when Licensee removes, re-installs and activates this software version on the same or other Designated Equipment.

7.2. Upon expiration of the latest purchased Subscription Period, the license granted hereunder shall continue for this Licensed Software only. Software will continue to function without timing out, however; the Licensee will not be delivered or will not be granted access to production released software updates or patches that are released to the public following the expiration of their subscription

BOSCH002829

period or termination of this agreement unless the Licensed Software subscription is renewed for another license period.

7.3. In the event this Agreement is terminated for cause, the license granted hereunder shall expire immediately.

## 8. Assignment of the use rights/ Implementation on other computers

The right of use of the Licensed Software may be assigned to third parties but only under the terms of this Agreement with the Licensor's prior written consent. Licensee may not give away, rent and lend the Licensed Software nor transfer the Licensed Software from the Designated Equipment to another computer without prior approval of Licensor.

## 9. Jurisdiction

9.1 All disputes involving this Agreement, except actions arising under the copyright provision of Title 17 of the U.S. Code, shall be determined under the law of the State of Illinois and shall be submitted to an arbitrator appointed and operating under the Uniform Arbitration Act and the procedural rules of the American Arbitration Association (hereinafter "AAA"). The locations of the arbitration hearing will be Chicago, Illinois or such other location as agreed to by the parties. Within thirty (30) days after either party has notified the other in writing that it is submitting a dispute to arbitration, one arbitrator shall be chosen under the then current Rules of the AAA pertaining to commercial disputes. Neither party shall be allowed to object to any arbitrator appointed by AAA. The ensuing arbitration shall be conducted according to the Rules of the AAA. The written decision of the arbitrator shall be final, binding and enforceable in any court of the United States or Canada with appropriate jurisdiction. In no case shall the arbitrator be authorized to award cost and damages otherwise prohibited herein. The application of the collision law as well as the Hague Conventions Relating to a Uniform Law on the International Sales of Goods, the United Nations Uniform Purchase Rights and other Conventions on Contracts for the International Sale of Goods shall be excluded.

## 10. Miscellaneous

10.1. All rights granted to Licensee by Licensor under this Agreement (use of Licensed Software) shall expire without notice, if the Licensee infringes a provision of this Agreement.

10.2. In the event this agreement is terminated or expires, Licensee shall uninstall and destroy, within one week after this Agreement has terminated, the Licensed Software as well as all complete or partial copies thereof, whether altered or embedded in other programs, as well as any documentation, and shall provide a written confirmation thereof to the Licensor.

10.3. Modifications or supplements to this Agreement - including this Article 10.3 - shall be valid only when provided in writing and signed by both parties.

10.4. Should any provision of this Agreement be invalid or become invalid, then such provision shall be severed from this Agreement and the other provisions shall remain in full force and effect. Any invalid provision shall be replaced by a reasonable provision which is permissible under the law and which reflects the intent of the original provision.

BOSCH002830

10.5 Licensee agrees to obtain written permission from the owner or leasor of the Ford vehicles which the Licensed product is used to retrieve EDR data from, or the owner's legal representative; or written legal compulsion, in the form of a subpoena, warrant or court order, prior to downloading data from a Ford vehicle.  Violation of this agreement will result in the termination of CDR software license.

BOSCH002831

End User License Agreement (EULA)
For CDR Tool Software after Activation
Version: May 30, 2019

1. ACCEPTANCE OF TERMS
IMPORTANT: READ THIS ENTIRE EULA CAREFULLY. THIS IS A LEGAL DOCUMENT UNDER WHICH YOU HAVE
CERTAIN LEGAL RIGHTS AND OBLIGATIONS.

THIS EULA IS A LEGAL AGREEMENT BETWEEN YOU (EITHER AN INDIVIDUAL OR A COMPANY OR OTHER
ORGANIZATION) ("YOU" OR "LICENSEE")) AND BOSCH AUTOMOTIVE SERVICE SOLUTIONS INC.(REFERRED
TO HEREIN AS "BOSCH") CONCERNING YOUR ACCESS TO AND USE OF THE SOFTWARE PURCHASED
THROUGH A SUBSCRIPTION PURCHASE ("SOFTWARE").  FOR THE TERM SELECTED AT THE TIME OF
PURCHASE OR RENEWAL ("SUBSCRIPTION TERM").

THIS EULA REQUIRES BINDING ARBITRATION TO RESOLVE ANY DISPUTE OR CLAIM ARISING OUT OF OR
RELATING IN ANY WAY TO THE EULA OR YOUR ACCESS TO OR USE OF THE SOFTWARE, AND YOU AGREE
THAT ANY SUCH DISPUTE OR CLAIM WILL BE RESOLVED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A
CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION OR ARBITRATION. PLEASE REVIEW SECTION 11
CAREFULLY TO UNDERSTAND YOUR RIGHTS AND OBLIGATIONS WITH RESPECT TO THE RESOLUTION OF ANY
DISPUTE OR CLAIM ARISING OUT OF OR RELATING IN ANY WAY TO THIS EULA OR YOUR ACCESS TO OR USE
OF THE SOFTWARE.

PLEASE REVIEW THIS EULA CAREFULLY. BOSCH MAY, AT ITS DISCRETION, UPDATE THIS EULA AT ANY TIME
WITH OR WITHOUT NOTICE TO YOU. YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS
EULA, INCLUDING ANY UPDATES COMMUNICATED TO YOU.  BY CLICKING ON THE "ACCEPT" BUTTON OR
DOWNLOADING, UPLOADING, INSTALLING, ACCESSING OR USING THE SOFTWARE IN ANY WAY, YOU AGREE
TO BE BOUND BY THE TERMS OF THIS EULA.

IF YOU DO NOT AGREE TO THE TERMS OF THIS EULA, DO NOT USE THE SOFTWARE AND PROMPTLY
REMOVE THE SOFTWARE PACKAGE FROM THE COMPUTER.

2. GRANT OF LICENSE AND RESTRICTIONS

   2.1. Your Authorized Use of the Software.  Subject to your compliance with this EULA in all material
respects:

   2.1.1. If You are an individual person and you received an activation certificate ("Activation Certificate")
pursuant to a Bosch CDR Tool software Subscription from Bosch or an approved CDR Tool reseller or
distributor ("Subscription"), Bosch grants You a personal, limited, non-exclusive, non-transferable, non-
sublicensable, revocable license to use the Software, in object code form only, for the Purpose on the
Designated Equipment.  "Designated Equipment" shall mean no more than one personal computer per
installation of the Software, such computer equipment to be identified by You as the equipment upon
which You will be the primary user and intend the Software to be used.

   2.1.2. If You are a company or any other type of organization, Bosch grants to You the right to designate
one individual person within Your organization to have the non-exclusive right to exercise the rights set
forth in Section 2.1.1.

   2.2. Delivery and Installation.

**Hrg Ex
2**

BOSCH002800

2.2.1. Provided you retain a valid Subscription issued by the Bosch CDR Software License Service (VLMS), You may implement activation of the Software only on the Designated Equipment provided that the Designated Equipment meets the minimum requirements according to Bosch's recommendations as outlined in the Related Materials. "Related Materials" shall mean all materials other than the Software furnished by Bosch and including, for example, Getting Started Guide, CDR Help File, instructional documentation, guides, and all permitted copies of such material made by Licensee. Connections to vehicles and or electronic control units (ECU) for the purposes of retrieving data must be done by directly connect the CDR tool to the vehicle or ECU using CDR tool cables and/or adaptors approved by Bosch. Any connections to a vehicle or ECU through additional hardware and software which is not part of the CDR tool is prohibited including, but not limited to, indirectly connecting the CDR tool through a wireless OBDII communications device, enabling remote connection to CDR tools over a server or internet server.

2.2.2. The Software which is installed on a second computer may be activated using a legitimate Activation Certificate from Bosch for a single license for back-up or alternate use by the Licensee. Both activations for a single license shall not be used concurrently or in the same manner as a second license. The second activation is intended for the Licensee to use when one computer is not in use.

2.2.3. Bosch shall provide an Activation Certificate to the Licensee after receipt of Licensee's payment for the agreed upon sales price of the Subscription. Activation Certificates and corresponding Software updates are available to the Licensee during the Subscription Term and will be delivered to the Licensee through the email system and made available via download from the internet respectively.

2.2.4. Changes of email address shall promptly be provided to Bosch or the authorized CDR Tool distributor or reseller your Subscription was purchased through.

2.3. Restrictions on Your Use of the Software. The Software or its components may be used only as expressly authorized in this EULA, and in no other way. You expressly agree NOT to:

2.3.1. In whole or in part, alter, copy, disassemble, decompile, reverse engineer, decode, or otherwise attempt to access or derive the source code or architectural framework of the Software;

2.3.2. Remove any copyright or proprietary notices from any part of the Software;

2.3.3. Unless otherwise agreed in writing by Bosch, use the Software as server software for making the Software available for multiple users (simultaneous use) over a network, install it on a server and allow users to access to the Software remotely for the purpose of multi-user access, or install the software on a device for use only by remote users;

2.3.4. Copy (other than once in the process of installing the Software or downloading updates, and once for back-up purposes), distribute, rent, lease, loan, assign, or sublicense all or any portion of the Software;

2.3.5. Modify in any way or prepare derivative works of the source or object code of the Software;

2.3.6. Provide a copy of the Software to anyone who is not bound by this EULA, or permit, allow, or authorize any other person or entity who is not bound by this EULA to use the Software;

2.3.7. Use or permit any other person to use the Software in any way that competes with Bosch's products or services, except as expressly permitted by applicable law;

2.3.8. Attempt to transfer Your rights under this EULA, or delegate Your obligations under this EULA, without Bosch's express prior written permission.

2.4. Except for the right of use pursuant to Section 2.1, Bosch reserves all rights for the Software, in particular exclusive right to reproduce, to distribute, to prepare derivative works therefrom and to publicly display the Software.

## 3. TERMS OF PAYMENT AND PRICES

3.1. Bosch reserves the right to increase the price for any future Subscriptions.  Licensee may refuse to purchase a Subscription in the event of price increase.  Any failure to renew your software Subscription or update the Software will have no effect on the rights granted to Licensee related to Software which have already been obtained legitimately either for free or paid for and installed on Designated Equipment.

## 4. WARRANTY

4.1. THE SOFTWARE AND OTHER INFORMATION DELIVERED TO YOU IS PROVIDED "AS IS" AND WITH ALL FAULTS.  BOSCH DOES NOT WARRANT THE ACCURACY AND COMPLETENESS OF THE DATA.
Therefore, in each individual case, it shall be assured by Licensee that the vehicle identification as well as the equipment used to read crash data from ECUs on a given vehicle corresponds to the data of the Software.

4.2. BOSCH DOES NOT WARRANT THAT THE SOFTWARE OR USE THEREOF WILL BE COMPATIBLE WITH EACH VEHICLE MODEL OR IN CONNECTION WITH OTHER PROGRAMS ON THE SAME COMPUTER. THE WARRANTIES SET FORTH IN THIS SECTION IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

4.3. THE REMEDIES SET FORTH IN THIS SECTION REPRESENT LICENSEE'S SOLE AND EXCLUSIVE REMEDIES FOR ANY BREACH OF WARRANTY BY BOSCH.

4.4. THIS INFORMATION SUPPLIED UNDER THIS EULA HAS BEEN COMPILED FOR USE ONLY BY VEHICLE MANUFACTURER PRODUCT EXPERTS, ENGINEERS AND PROFESSIONAL ACCIDENT INVESTIGATION & RECONSTRUCTION SPECIALISTS AND ASSUMES AN APPROPRIATE LEVEL OF SKILL AND COMPETENCE.

4.5. Licensee shall promptly inform Bosch of any defect in the Software and submit the appropriate information to enable the Bosch to correct the defect.  Bosch shall, at its sole option; correct the defects discovered in the Software or deliver a new version of the Software.

4.6. In the event Bosch cannot detect the defect or the defect resulted from misuse or other circumstances that are beyond Bosch's control, Licensee shall bear any costs incurred in the correction of the defect. BOSCH SHALL NOT BE LIABLE FOR ANY DEFECTS IN THE EVENT THAT LICENSEE OR A THIRD PARTY MODIFIES THE SOFTWARE UNLESS LICENSEE PROVIDES EVIDENCE THAT THE CHANGES DID NOT INFLUENCE OR PRODUCE THE DEFECT.

## 5. LIABILITY

5.1. In no event shall Bosch be liable for damages arising out of or related to incorrect, incomplete or misinterpreted Software and/or data. Licensee shall take care to ensure that data supplied hereunder is applicable to the vehicle ECU, the system(s) and the vehicle the data was retrieved from.

5.2.  IN NO EVENT SHALL BOSCH BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES ARISING FROM OR RELATED TO THE SOFTWARE OR USE THEREOF, BOSCH'S PERFORMANCE OR FAILURE TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER, WHETHER THE CLAIMS BE IN CONTRACT OR TORT, INCLUDING NEGLIGENCE OR STRICT LIABILITY.  LICENSEE'S SOLE AND EXCLUSIVE REMEDY AFTER ACCEPTANCE OF THE SOFTWARE SHALL BE THE REMEDY AVAILABLE UNDER THE WARRANTY PROVISION.

5.3. Licensee shall appoint only qualified staff and use appropriate test equipment or tools to use the Software. Where applicable, Bosch recommends the use of appropriate test equipment and tools as specified in the vehicle manufacturer's issued service manuals.

5.4.  Bosch shall not be responsible for any damage claim arising from Licensee's failure to comply with the provisions of this EULA.

6. TERM/ DURATION

6.1. The license term for this Software version remains in effect as long as You keep the installed Software on the Designated Equipment in compliance with this EULA.  Upon expiration of the latest purchased Subscription Term, the license granted hereunder shall continue for this version of the Software only.  The Software will continue to function without timing out; however, You will not be delivered or will not be granted access to production released updates or patches that are released to the public following expiration unless the You purchase a new Software Subscription for another license period.

6.2. You may terminate this EULA at any time by returning, destroying, erasing, and/or deleting all copies of the Software and corresponding Activation Certificate, in their entirety, that are in your custody or control.

6.3. This EULA shall automatically terminate immediately and without notice to You if: (a) You fail to comply with any of the terms and conditions of this EULA. In such event, You must return, destroy, erase, and/or delete all copies of the Software, in their entirety, that are in your custody or control; or (b) You purchase an activation certificate to enable additional functionality of the Software at which time the terms and conditions of the Activation EULA will supersede this EULA.

6.4. Bosch may have other legal rights upon such termination, which it reserves and does not waive.

6.5.  Sections 2.4 and 8-12 of this EULA shall remain effective and binding upon You after termination of this EULA.  The survival of such sections after termination of this EULA does not give You any right to use the Software in any way after such termination.

7. OPEN SOURCE SOFTWARE

7.1. The Software may include open source software components.  Relevant information and details may be found at: c:\Program Files (x86)\Bosch\VTX-VCI.

8. CONFIDENTIALITY OF THE SOFTWARE

8.1. You acknowledge and agree that parts of the source code for the computer programs underlying the Software are a Bosch trade secret.  You agree that any efforts by You to reverse engineer, decode decompile, disassemble or otherwise attempt to access or derive the source code or architectural framework of the Software, or any other efforts to learn the contents of such source code, data bases or resource files and applications could result in Your access to or knowledge or disclosure of such trade secrets without Bosch's permission, and that such access, knowledge, or disclosure could violate Bosch's trade secret rights and cause Bosch immediate and irreparable injury, entitling Bosch to obtain a preliminary and/or permanent injunction against You.

8.2. Pursuant to the Defend Trade Secrets Act of 2016, 18 USC Section 1833(b) (the "DTSA"), Recipient is on notice and acknowledges that, notwithstanding the foregoing or any other provision of this EULA:

8.2.1. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that- (A) is made- (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

8.2.2. individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual- (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

9. DATA PRIVACY AND PROTECTION.

9.1. Licensee agrees that the users of the CDR tool and Software are obligated to be familiar with and follow applicable laws and regulations with respect to data privacy and general data protection regulations (e.g., US Driver Privacy Act of 2015, and the EU General Data Protection Regulation) related to the collection of data from vehicles, including but not limited to Event Data recorded as the result of a crash or active/passive safety system related events. Data collected from the vehicle and subsequently saved to a CDR file may contain Personally Identifiable Information (PII) including but not limited to Vehicle Identification Number (VIN), date & time the event data was recorded and, in some cases, Global Positioning System (GPS) data. Depending on the applicable local, regional, federal, or EU laws and regulations, compliance to regulations may require consent from the vehicle owner or sufficient legal authority may be required to access recorded data prior to retrieval of data from the vehicle using the CDR tool as well as compliance with the GDPR when processing and handling the data stored in the CDR file. Licensee also agrees that it is incumbent on the users of the CDR tool and Software to ensure compliance with applicable laws and regulations.

10. SOFTWARE AUDIT.

10.1. During the term of this EULA and at any time during the two (2) years thereafter, Bosch may audit Your use of the Software with advance written notice. You shall cooperate with the audit, including by providing access to any books, computers, records, or other information that relate or may relate to use of the Software. Such audit shall not unreasonably interfere with Your business activities. If Vendor discovers unauthorized use, reproduction, distribution, or other exploitation of the Software, You shall reimburse Bosch for the reasonable cost of the audit, or of the next audit in case of discovery without an audit, in addition to such other rights and remedies as Bosch may have.

11. JURISDICTION

11.1. All disputes involving this EULA, except actions arising under the copyright provision of Title 17 of the U.S. Code, shall be determined under the law of the State of Michigan and shall be submitted to an arbitrator appointed and operating under the Uniform Arbitration Act and the procedural rules of the American Arbitration Association (hereinafter "AAA").  The locations of the arbitration hearing will be Oakland County, Michigan or such other location as agreed to by the parties.  Within thirty (30) days after either party has notified the other in writing that it is submitting a dispute to arbitration, one arbitrator shall be chosen under the then current Rules of the AAA pertaining to commercial disputes.  Neither party shall be allowed to object to any arbitrator appointed by AAA. The ensuing arbitration shall be conducted according to the Rules of the AAA.  The written decision of the arbitrator shall be final, binding and enforceable in any court of the United States or Canada with appropriate jurisdiction.  In no case shall the arbitrator be authorized to award cost and damages otherwise prohibited herein. The application of the collision law as well as the Hague Conventions Relating to a Uniform Law on the International Sales of Goods, the United Nations Uniform Purchase Rights and other Conventions on Contracts for the International Sale of Goods shall be excluded.

12. MISCELLANEOUS

12.1. You shall not: (a) permit any third party to access or use the Software in violation of any U.S. law or regulation; or (b) export the Software or otherwise remove it from the United States except in compliance with all applicable U.S. laws and regulations. Without limiting the generality of the foregoing, Customer shall not permit any third party to access or use the Software in, or export it to, a country subject to a United States embargo

12.2. You agree to receive periodic email notices announcing CDR Tool updates, new activation certificates and software Subscription status notices designed to inform You of pending expiration of said Subscriptions. If You wish to opt-out of these such emails, You agree to contact their CDR Tool sales representative and request that Your account on the CDR software license server be deleted or suspended. You agree that deleted or suspended accounts will result in You no longer receiving Activation Certificates during your Subscription Term.

12.3.  You shall uninstall and destroy, within one week after this EULA has terminated, the Software and corresponding Activation Certificates as well as all complete or partial copies thereof, whether altered or embedded in other programs, as well as any documentation, and shall provide a written confirmation thereof to the Bosch.

12.4. Modifications or supplements to this EULA - including this Section 12.4 shall be valid only when provided in writing and signed by both parties.

12.5. Should any provision of this EULA be invalid or become invalid, then such provision shall be severed from this EULA and the other provisions shall remain in full force and effect. Any invalid provision shall be replaced by a reasonable provision which is permissible under the law and which reflects the intent of the original provision.

12.6. Licensee agrees to obtain written permission from the owner or leasor of the Ford vehicles which the Licensed product is used to retrieve EDR data from, or the owner's legal representative; or written legal compulsion, in the form of a subpoena, warrant or court order, prior to downloading data from a Ford vehicle.  Violation of this EULA will result in the termination of the Software license.