## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

COLLISION SCIENCES, INC.

        Petitioner /
        Counter-Respondent,

  v.

BOSCH AUTOMOTIVE SERVICE
SOLUTIONS LLC,

        Respondent /
        Counter-Petitioner

Civil Action No. 2:25cv11026

Hon. Judge Jonathan J.C. Grey

Hon. Mag. Judge Elizabeth A. Stafford

## MEMORANDUM IN OPPOSITION TO COLLISION SCIENCES, INC.'S PETITION TO VACATE OR MODIFY ARBITRATION AWARD, AND IN SUPPORT OF BOSCH'S PETITION TO CONFIRM THE ARBITRATION AWARD

1

## OPPOSITION AND COUNTER-PETITION

Respondent Bosch Automotive Service Solutions, LLC ("Bosch"), hereby submits its opposition to Collision Sciences, Inc.'s ("CSI") Petition to Vacate or Modify Arbitration Award ("CSI's Petition") (Dkt. No. 1) directed at the Arbitration Award entered on January 10, 2025 ("the Final Award") in the matter *Bosch Automotive Service Solutions, Inc. v. Collision Sciences, Inc.*, Case No. 01-21-0016-2306 (International Centre for Dispute Resolution). As CSI's bases for vacating or modifying the Final Award are without merit, Bosch also hereby petitions this Court for an order confirming the Final Award pursuant to Section 9 of the Federal Arbitration Act (the "FAA"). (9 U.S.C. § 9).

## THE PARTIES, JURISDICTION, AND VENUE

Bosch is a Delaware limited liability company with its principal place of business in Michigan. CSI is an Ontario corporation with its principal place of business in Mississauga, Ontario, Canada. As this dispute involves an amount in controversy at a value exceeding the sum of $75,000, and because the parties are diverse, this Court properly has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Further, venue is proper in this Court pursuant to the FAA, as the Final Award was made within this Court's district, in Detroit, Michigan.

## FACTS AND BACKGROUND

After a lengthy arbitration proceeding, the Arbitrator in this matter entered the Final Award, which found that CSI breached an End User License Agreement

("EULA") governing the use of Bosch Crash Data Retrieval Tool Software (the "CDR Software"). The Arbitrator specifically found that CSI breached the EULA by misusing the CDR Software to create its own software product that competes against Bosch. *See* Final Award, pp. 3-4, Ex. D to CSI's Petition (Dkt. No. 1-4). The Arbitrator went on to find that CSI's "repeated and ongoing breaches" of the EULA "constitute irreparable harm that warrants the imposition of a permanent injunction." *Id.*, p.7. CSI now brings its petition to vacate, seeking to undo the results of the arbitration.

CSI purchased yearly licenses for the CDR Software on at least two occasions: January 26, 2018 and July 9, 2019. (Bosch's Post-Hearing Brief, Ex. H to CSI's Petition (Dkt. No. 1-8 at pp. 19-20.) Upon installation and activation of the CDR Software, CSI agreed to the terms of Bosch's then applicable End User License Agreement ("EULA"). Due to concerns about CSI's usage of the CDR Software, on July 14, 2020, Bosch requested an audit of such usage, citing the EULA' audit provisions. Demand for Arbitration, Ex. E to CSI's Petition (Dkt. No. 1-5 at pp. 17-19.) After prolonged negotiations and CSI's lack of cooperation, Bosch filed a Demand for Arbitration on August 20, 2021, asserting a cause of action for breach of contract over CSI's unauthorized use of the software and refusal to permit an audit as requested by Bosch. *Id.*

Following a failed attempt at mediation, the dispute was submitted to the Arbitrator on February 21, 2022.[1] Bosch then filed a Request for Interim Measures to compel CSI to participate in an audit of its software usage. The Arbitrator granted Bosch's request and ordered an audit on April 20, 2022. *See* Order on Software Audit, April 20, 2022, attached hereto as Exhibit A. At CSI's insistence, the audit was conducted remotely by a third-party forensic investigator retained by Bosch. The final audit report was issued on July 31, 2023, with Bosch incurring a cost of $111,501.80 for the audit. *See* Audit Report, Hrg. Ex. 39, Ex. H-2 to CSI's Petition (Dkt. No. 1-10).

After extensive discovery and motion practice, the final arbitration hearing took place on September 9-10, 2024. Post-hearing briefs were submitted to the Arbitrator and the Final Award was issued on January 10, 2025. (*See* Final Award, Ex. D to CSI's Petition (Dkt. No. 1-4).) The Final Award found that CSI breached the EULA that was effective as of May 31, 2019, and ordered CSI to pay Bosch $111,501.80 in monetary damages, reflecting the cost of the software audit. Final Award, at pp. 2, 7, 9 (Dkt. No. 1-4).[2]

---

[1] The Parties agreed on the selection of Thomas W. Cranmer, of Miller Canfield as the Arbitrator pursuant to the ICDR-AAA rules. *See* December 27, 2021 Letter of Rafael Carlos del Rosal Carmona, International Centre for Dispute Resolution, American Arbitration Association, attached hereto as Exhibit B.

[2] Bosch has received payment from CSI for the amount of the damages award.

The Final Award also issued a permanent injunction with the following

provisions:

1.      CSI, including its employees, owners, officers, contractors, and agents, shall be prohibited from using or possessing any version of the Bosch CDR Tool Software, including any version licensed to third-parties.

2.      CSI shall, within ten (10) days of this Award, take all necessary steps to uninstall, remove and delete any copy of the Bosch CDR Tool Software in its possession, as well as any install files and activation certificates for same.

3.      CSI shall, within thirty (30) days of this Award, take all necessary steps to permanently expunge from its database all data records relating to crash data derived or sourced in any way from the Bosch CDR Tool Software on or after July 9, 2019, the date CSI purchased a license covered by the 2019 EULA.

4.      CSI shall, within forty-five (45) days of this Award, provide to Bosch a certification executed under oath that it has taken the steps ordered in paragraphs (1) through (3) above.

*Id.* at pp. 8-9. On February 20, 2025, CSI submitted a declaration to Bosch,

purportedly to fulfill the latter requirement. *See* Declaration of Jason Bayley, dated

February 20, 2025, attached hereto as Exhibit C.

CSI filed its petition asking this Court to vacate or modify the Final Award

on April 9, 2025.

## LAW AND ARGUMENT

Pursuant to § 9 of the FAA, "a party may seek a judicial decree to confirm

an arbitration award, and the court **must** confirm that award, unless the court

vacates, modifies, or corrects the award." *PolyOne Corp. v. Westlake Vinyls, Inc.*,

937 F.3d 692, 696 (6th Cir. 2019) (emphasis added). The only grounds for vacating, modifying, or correcting an arbitration award under the FAA are those that the FAA expressly lists. *Id.* The specific grounds are narrow: (1) the award was procured by fraud; (2) there was evident corruption in the arbitration; (3) there was misconduct by the arbitrator; or (4) the arbitrator exceeded its powers. 9 U.S.C. § 10; The FAA does ***not*** provide for judicial review of an arbitrator's legal conclusions as the Act presumes that arbitration awards will be confirmed. *Dawahare v. Spencer*, 210 F.3d 666, 669, 697 (6th Cir. 2000) ("[i]t is well established that courts should play only a limited role in reviewing the decisions of arbitrators."); *see also Samaan v. Gen. Dynamics Land Sys.*, 835 F.3d 593, 600 (6th Cir. 2016) (statutory grounds enumerated in § 10 are the exclusive means under the FAA to vacate an arbitrator's award).

"When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (internal quotations omitted). Even when a court is convinced that an arbitrator committed serious error, it is not sufficient to overturn the arbitrator's decision, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority. *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

I.      **THE ARBITRATOR DID NOT MANIFESTLY DISREGARD THE LAW IN ISSUING A PERMANENT INJUNCTION**

CSI asserts that the award of a permanent injunction by the Arbitrator was "in manifest disregard of the law," and thus was outside of the Arbitrator's authority. CSI's Petition at pp. 11-12. While it is unsettled whether the "manifest disregard of the law" standard still provides a basis to vacate an arbitration award in the Sixth Circuit, *see, e.g., Leviathan Grp. LLC v. Delco LLC*, 735 F. Supp. 3d 823, 828 (E.D. Mich. 2024) (discussing the standard); *Buck v Compton*, No. 23-5092/5095, 2023 U.S. App. LEXIS 33988, *8 (6th Cir. Dec. 20, 2023) (same, and calling the standard's foundation "questionable"), the Court has characterized standard as requiring truly "outrageous circumstances" for a petition to vacate to be successful. *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022).

To prove that the arbitrator manifestly disregarded the law, CSI must show "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the [arbitrator] refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). The first element demands the existence of controlling legal authority on the issue. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (stating that, for there to be manifest disregard, "the decision must fly in the face of clearly established legal precedent").

"When a reasonable judge could 'conceivably' reach the arbitrator's legal conclusion, a manifest-disregard challenge must fail even if we would have reached the opposite one." *Hale v. Morgan Stanley Smith Barney LLC*, No. 21-4184, 2023 U.S. App. LEXIS 9121, at *11 (6th Cir. Apr. 17, 2023) (quoting *Jaros*, 70 F.3d at 421); *see also Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990) ("[A]llegations of errors in interpretation ...fail[] to prove that the arbitrators displayed a manifest disregard of the law.").

The second element looks at whether the arbitrators "refused to heed" the clearly defined legal principle or "consciously chose[] not to apply it." *Dawahare*, 210 F.3d at 669. This element requires proof that the arbitrators "were aware of some relevant law that they chose to ignore." *Romanzi*, 31 F.4th at 375-76. Proof of a conscious refusal to follow the law is also required, making evidence of the arbitrators' reasoning is key. However, "[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare*, 210 F.3d at 669.

While CSI argues that the Arbitrator disregarded the law in issuing an injunction absent irreparable harm, it is apparent that CSI really takes issue with the Arbitrator's *factual* findings related to irreparable harm, not any disregard for the law. *See* CSI's Petition, p. 12 ("the arbitrator manifestly disregarded the law in

8

issuing a permanent injunction despite the absence of *any* harm, must less *legitimate irreparable harm*") (emphasis added). CSI fails to address the Arbitrator's actual statements on the irreparable injury supporting the equitable remedy, complaining that "[i]nstead of identifying any legitimate injury, the arbitrator summarily concluded irreparable harm existed simply due to CSI's breaches of the EULA." *Id.*, p. 13. But the Arbitrator was not required to list and document every factual finding supporting the injunction, or even any explanation for the Final Award. *See Leviathan Grp.*, 735 F. Supp. 3d at 829 ("an arbitrator need not provide a record of findings and supporting law to issue a valid, enforceable award, and a reviewing court should not use the lack of a clear record as an impediment to its confirmation of an arbitration award.")

Nevertheless, the Arbitrator actually did explain at least some of the reasons for his findings that CSI's ongoing breaches of the EULA constituted irreparable harm. The Arbitrator specifically noted that because "these breaches occur entirely within the confines of CSI's private offices, it is both time consuming and difficult for Bosch to ascertain exactly when and how they are occurring, as well as which, if any, potential customers may be impacted." Final Award, at 7-8 (Dkt. No. 1-4). He further observed that "the pendency of [the arbitration hearing] has not dampened [CSI's] willingness to commit these breaches of the EULA." *Id.*

The Arbitrator's listed reasons for finding irreparable harm are well supported by case law and cannot be said to be in manifest disregard of clearly defined legal principles. Irreparable injury is defined as "an injury that cannot be adequately measured or compensated by money." *Cellnet Comm'ns, Inc. v. New Par,* 291 F. Supp. 2d 565, 569 (E.D. Mich. 2003) (citations omitted). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992). Courts have found irreparable harm when there is no cure for a breach of an agreement. *ITT Educ. Servs. v. Arce,* 533 F.3d 342, 347 (5th Cir. 2008).

The Arbitrator's written findings, while not required to be complete or even to have been given at all, align with the legal standard for issuing a permanent injunction. Furthermore, contrary to CSI's assertion, the Arbitrator could have also relied upon the contractual language in the EULA specifically providing that certain breaches will constitute irreparable harm warranting a permanent injunction. *See* Bosch's Post-Hearing Brief, pp. 32-33 (Dkt. No. 1-8). The existence of such contractual language is a factor that can be considered when finding irreparable injury. *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019); *J.P. Morgan Sec., LLC v. Duncan,* No. 2:22-cv-11732,

2022 U.S. Dist. LEXIS 143924, at *15 (E.D. Mich. Aug. 11, 2022) (finding

"[s]uch contractual provisions do support finding irreparable harm.").

Given that the Sixth Circuit does not require an arbitrator to provide a

detailed explanation of his reasoning, that it applies a highly deferential standard of

review to arbitration awards, and that the Arbitrator's written findings and analysis

align with established legal principles for granting permanent injunctions, there is

no basis to conclude that the arbitrator manifestly disregarded the law.

## II.     AN INJUNCTION AGAINST THOSE ACTING IN CONCERT WITH CSI IS WITHIN THE ARBITRATOR'S AUTHORITY

CSI asserts that the Arbitrator exceeds his authority and decided issues not

submitted to him by issuing a permanent injunction against CIS, including its

employees, owners, officers, contractors and agents." CSI's Petition at pp. 7-11

(Dkt. No. 1); Final Award at 8 (Dkt. No. 1-4). CSI's argument in support ignores

one of the most basic tenets of the law of corporations: "the only way in which a

corporation can act is through the individuals who act on its behalf." *United States

v. Dotterweich*, 320 U.S. 277, 281 (1943); *see also Lawler v. Fireman's Fund Ins.

Co.*, 322 F.3d 900, 906 (6th Cir. 2003) ("a corporation can act only by and through

real live persons"). It is thus no surprise that well settled law establishes that an

injunction entered by a court "not only binds the parties … but also those identified

with them in interest, in privity with them, represented by them or subject to their

control." *United States v. Elsass*, 769 F.3d 390, 398 (6th Cir. 2014) (quoting *Regal

*Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945)); *see also United States v. Hochschild*, 977 F.2d 208, 211 (6th Cir. 1992) ("it is a basic equity principle that whenever an injunction, whatever its nature may be, is directed to a corporation, it also runs against the corporation's officers").Indeed, the Federal Rules of Civil Procedure explicitly state that an injunction entered by a Federal Court binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in [(A) or (B)]." Fed. R. Civ. P. 65(d)(2). Without this requirement, parties subject to an injunction could "nullify a decree by carrying out prohibited acts through aiders and abettors, [who] were not parties to the original proceeding." *Elsass,* 769 F.3d at 398.

CSI specifically objects to the portion of the Final Award prohibiting "CSI, including its employees, owners, officers, contractors, and agents… from using or possessing any version of the Bosch CDR Tool Software, including any version licensed to third-parties." CSI's Petition, pp. 5-6, 7-11 (Dkt. No. 1); Final Award, p. 8 (Dkt. No. 1-4). CSI argues that injunctive relief under the EULA is only available against "CSI as an entity alone, not its employees, officers, or agents on an individual basis, much less on third parties." CSI's Petition, P. 10 (Dkt. No. 1).[3]

---

[3] CSI implies that the injunction binds third-parties, but does not provide any explanation of this view. The clear language of the Final Award shows that the injunction is directed at *CSI's use or possession* of the CDR Software licensed to

The injunction is clearly and unmistakably directed at CSI, a party to the EULA and to the arbitration. Including the individuals who act for CSI or are in active concert or participate with it is consistent with long-settled law regarding those bound by an injunction. As such, the Arbitrator acted within his authority by issuing injunctive relief against CSI.

CSI further requests that the Final Award be modified to remove from the injunction "CSI's employees, officers, and agents in their individual capacities." CSI's Petition, p. 11 (Dkt. No. 1). CSI has not articulated any scenario where such individuals are not acting in concert or participating with CSI, and are thus legitimately included within an injunction against CSI. Removing CSI's own employees, officers and agents from the injunction would allow them to circumvent the injunction by, for example, simply starting another company to continue the same activities that the injunction prohibits. *See Elsass,* 769 F.3d at 398. This would be an absurd result, as it would effectively nullify the injunction and go against the common law doctrine highlighted by the Supreme Court. *Regal Knitwear,* 324 U.S. at 14.

---

third parties, not the rights that any third-parties may have in their own appropriately-licensed software. In any event, the CDR Software's EULA only permits one user per license, and does not permit sharing licenses with others.

Accordingly, there is no basis to modify the Final Award and CSI's request should be denied.

## CONCLUSION

The Final Award should be confirmed. There is no basis for vacating or modifying the Final Award because the Arbitrator was within his authority to issue a permanent injunction after finding irreparable harm, the Arbitrator did not manifestly disregard the law, and an injunction against those acting in concert with CSI is within the Arbitrator's authority. Thus, Bosch respectfully requests that this Court dismiss CSI's Petition to vacate the Final Award and confirm the Final Award and grant any other relief this Court deems equitable and just.

Dated: May 1, 2025                    By: _s/ Steven McMahon Zeller_
                                      DYKEMA GOSSETT PLLC

                                      Steven McMahon Zeller (IL6238416)
                                      10 S. Wacker Drive, Suite 2300
                                      Chicago, Illinois 60606
                                      Telephone: (312) 876-1700
                                      SZeller@dykema.com

                                      Lisa A. Brown (P67208)
                                      400 Renaissance Center
                                      Detroit, Michigan 48243
                                      Telephone: (313) 568-6800
                                      LBrown@dykema.com

                                      *Attorneys for Respondent Bosch*
                                      *Automotive Service Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will provide notification to all counsel of record.

By: *s/ Steven McMahon Zeller*
Steven McMahon Zeller (IL6238416)

DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
SZeller@dykema.com

4912-8741-1257.12

16